# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * | | |
| MARY SCHOEBERLEIN, | * | |
| | * | No. 14-697V |
| Petitioner, | * | Special Master Christian J. Moran |
| | * | |
| v. | * | Filed: June 22, 2018 |
| | * | |
| SECRETARY OF HEALTH | * | attorneys' fees and costs, expert |
| AND HUMAN SERVICES, | * | rate, expert travel costs. |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * * * | | |

Mark T. Sadaka, Mark T. Sadaka, LLC, for petitioner;
Darryl R. Wishard, United States Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS**[1]

Ms. Schoeberlein alleged that an influenza vaccination, given to her on September 13, 2012, significantly aggravated her pre-existing (but undiagnosed) condition formerly known as Wegener's granulomatosis, now known as granulomatosis with polyangiitis ("GPA"). At hearing, Ms. Schoeberlein did not prevail. Nevertheless, as the Vaccine Act permits, she has filed a motion for an award of attorneys' fees and costs. She is awarded $58,724.08.

\* \* \*

Represented by attorney Mark T. Sadaka, Ms. Schoeberlein filed her petition on August 4, 2014. She periodically filed medical records. The Secretary's initial

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

position was that she had not demonstrated entitlement. Resp't's Rep., filed April 17, 2015. To add evidence, Ms. Schoeberlein retained an immunologist, M. Eric Gershwin. Ms. Schoeberlein ultimately produced four reports from Dr. Gershwin (exhibits 23, 44, 46, and 49). In response, the Secretary filed three reports from another immunologist, Thomas Forsthuber (exhibits C, Y, and GG).

The case proceeded to a hearing with each party submitting material before the hearing. At the hearing, Dr. Gershwin and Dr. Forsthuber testified. At the end of the evidence, the undersigned ruled from the bench that Ms. Schoeberlein failed to meet her burden of proof. The undersigned memorialized the basis for this ruling in a decision issued on January 11, 2018. 2018 WL 945843.

Ms. Schoeberlein filed the pending motion for attorneys' fees and costs on January 25, 2018. The motion seeks a total of $80,165.79, comprised of $43,539.68 in attorneys' fees and $36,626.11 in attorneys' costs. Ms. Schoeberlein did not incur any costs.

The Secretary filed a response to Ms. Schoeberlein's motion. The Secretary represented that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Resp't's Resp., filed Jan. 26, 2018, at 2. With respect to amount, the Secretary recommended "that the special master exercise his discretion" when determining a reasonable award for attorneys' fees and costs. Id. at 3. Ms. Schoeberlein filed a short reply, which did not advance any meaningful arguments.

Upon review, the undersigned discovered that Ms. Schoeberlein had not filed any receipts for Dr. Gershwin's travel expenses. To remedy this omission, the undersigned instructed Ms. Schoeberlein to file them. She did on June 11, 2018. Exhibit 60. This matter is now ripe for adjudication.

\* \* \*

Even though compensation was denied, a petitioner who brings her petition in good faith and who has a reasonable basis for the petition may be awarded attorneys' fees and costs. See 42 U.S.C. § 300aa–15(e)(1). Here, Ms. Schoeberlein appears to have acted in good faith.[2] The work from Dr. Gershwin

---

[2] Ms. Schoeberlein's motion for attorneys' fees refers to the good faith of her attorney. Pet'r's Mot. at 3. However, good faith usually is considered from the perspective of the petitioner.

satisfies the reasonable basis standard. Respondent does not contend that petitioner failed to satisfy these criteria. Thus, Ms. Schoeberlein is eligible for an award of attorneys' fees and costs. The ensuing question is what is a reasonable amount of attorneys' fees and costs?

## I.     Attorneys' Fees

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Human Servs. 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Here, because the lodestar process yields a reasonable result, no additional adjustments are required. Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

### A.     Reasonable Hourly Rate

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation. Avera, 515 F.3d at 1349. There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower. Id. 1349 (citing Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)). In this case, almost all the attorneys' work was done outside of the District of Columbia.

Ms. Schoeberlein requests compensation for her primary attorney (Mark Sadaka), an associate attorney, as well as six paralegals who assisted them. The proposed rates are reasonable.

### B.     Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). The Secretary also did not directly challenge any of the requested hours as unreasonable.

3

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness. See Shea v. Sec'y of Health & Human Servs., No. 13-737V, 2015 WL 9594109, at *2 (Fed. Cl. Spec. Mstr. Dec. 10, 2015) ("special masters are not obligated to evaluate an attorney's billing records on a line-by-line basis in making the reasonableness determination … and certainly need not do so when Respondent has not attempted to highlight any specific alleged inefficiencies").

The entries from the attorneys and paralegals describe the activities with sufficient detail that the reasonableness of the work may be assessed. In general, the work and the charge for the work are reasonable.[3] However, paralegals have charged for performing tasks that are secretarial / clerical, such as preparing exhibits, calendaring events, mailing compact discs, and electronically filing documents. These activities should not be charged at all. Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989); Bennett v. Dep't of Navy, 699 F.2d 1140, 1145 n.5 (Fed. Cir. 1983); Guy v. Sec'y of Health & Human Servs., 38 Fed. Cl. 403, 407-08 (1997). Entries falling into this category are estimated to be approximately $500.00.

In addition, Ms. Schoeberlein's failure to include receipts for Dr. Gershwin's travel expenses in the original motion has consumed judicial resources. To offset this, the equivalent of one hour of Mr. Sadaka's time ($376.38) is removed.

For these reasons, Ms. Schoeberlein's requested amount is reduced by $876.38. Ms. Schoeberlein is awarded $42,663.30 in attorneys' fees.

## II.    Costs

In addition to seeking an award for attorneys' fees, Ms. Schoeberlein seeks compensation for costs expended, totaling $36,626.11. Components include routine costs, such as the costs for medical records, postage, and the filing fee. These routine costs total $1,798.71. They are reasonable, adequately documented, and awarded in full. Other components are costs for Dr. Gershwin's reports and costs associated with Mr. Sadaka's and Dr. Gershwin's attendance at the hearing.

---

[3] Paralegals seemed to take a relatively long time performing easily repeated tasks, such as requesting medical records. While the amount of time may be near the upper bound of a reasonable amount of time, the amount of time is reasonable. Nevertheless, Mr. Sadaka is encouraged to be attentive to this work and the charges for this work.

Reasonable expert fees are determined using the lodestar method, in which a reasonable hourly rate is multiplied by a reasonable number of hours. Caves v. Sec'y of Health & Human Servs., 111 Fed. Cl. 774, 779 (2013). Dr. Gershwin has generated five invoices, totaling $29,875.00. He has charged $500 per hour for approximately 60 hours of work (59.75 hours to be precise).

To determine the reasonableness of a proposed rate, special masters may consider the "area of expertise; the education and training required to provide necessary insight; the prevailing rates for other comparably respected available experts; the nature, quality, and complexity of the information provided; [and] the cost of living in the expert's geographic area." Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 206 (2009). Furthermore, "[p]etitioner has the burden of providing the foregoing information concerning expert fees." Id.

Dr. Gershwin's requested rate of $500 per hour is consistent with previous awards. Hoskins v. Sec'y of Health & Human Servs., No. 15-71V, 2017 WL 3379270, at *4 (Fed. Cl. Spec. Mstr. July 12, 2017). However, Dr. Gershwin has not earned this rate in this case because the quality of his work was extremely poor. See Sabella, 86 Fed. Cl. at 206 (indicating that a special master may consider the quality of an expert's work).

Ms. Schoeberlein alleged that the vaccination significantly aggravated her GPA. Thus, a central part of Ms. Schoeberlein's claim was that her progression was different from the expected course of GPA and she, accordingly, needed to present evidence related to this issue.

However, the opinions that Dr. Gershwin provided on the topic of GPA were muddled and inconsistent with both the scientific literature and his previously submitted expert reports in this very case. Decision, issued Jan. 11, 2018, 2018 WL 945843 at *2. Dr. Gershwin's inability to provide cogent expert testimony on the expected course of GPA was consistent with the fact that Dr. Gershwin has minimal experience in actually treating patients with GPA.[4] The weaknesses of Dr. Gershwin's opinions were so apparent that the undersigned issued a bench decision, finding Ms. Schoeberlein's case unpersuasive. Decision, issued Jan. 11, 2018.

---

[4] Dr. Gershwin saw approximately one patient with GPA each year over the course of his career. See exhibit 23 at 1.

When an expert is no longer providing opinions within his field of expertise, he should reveal his limitations. While petitioner bears some responsibility for ensuring that her experts stay within their wheelhouse, the reality is that parties often rely on the experts themselves to define the parameters of their expertise. Had Dr. Gershwin identified his limited ability to opine on the course of GPA earlier in these proceedings, it is foreseeable that considerable resources of petitioner, respondent, and the Court would have been conserved.

Under these circumstances, Dr. Gershwin's hourly rate for his work in this case is reduced to $200 per hour.[5] At this hourly rate, a further adjustment to the number of hours is not needed.[6] Consequently, Ms. Schoeberlein is awarded $11,950 for Dr. Gershwin's work.

The remaining category of costs concerns expenses for Mr. Sadaka and Dr. Gershwin to attend the hearing. Mr. Sadaka has submitted receipts totaling $1,085.66 and these expenses are awarded in full.

However, the story for Dr. Gershwin's travel expenses is not so simple. As alluded to earlier, the original motion for attorneys' fees and costs lacked any receipts from Dr. Gershwin. Instead, Ms. Schoeberlein submitted a one-page typed memo from Dr. Gershwin to Mr. Sadaka. It included five items, totaling $3,866.74. Pet'r's Mot. at pdf 26.

After Ms. Schoeberlein was ordered to file documents supporting Dr. Gershwin's claim, the claim changed. The bottom line changed from $3,866.74 to $3,682.01, a difference of $184.73. More importantly, the components changed as well. For example, Dr. Gershwin originally stated that he stayed in a hotel for two nights but then presented a receipt for just one night. Dr. Gershwin originally

---

[5] The undersigned expects that this reduction will be an aberration in that Dr. Gershwin will, going forward, present opinions only in situations in which he has sufficient background. When Dr. Gershwin has confined his work to areas in which he has expertise, his opinions have helped petitioners. E.g., Eamick v. Sec'y of Health & Human Servs., No. 15-519, 2018 WL _____ (Fed. Cl. Spec. Mstr. May 15, 2018) (crediting Dr. Gershwin's opinion and finding entitlement to compensation).

[6] The undersigned could have alternatively reduced the number of hours because a doctor with expertise in GPA, who merited compensation at $500 per hour, would not have spent so many hours learning about GPA. See Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 733 (2011) (noting that an experienced attorney who charges a relatively high hourly rate may be expected to perform some tasks in less time than inexperienced attorneys with lower hourly rates).

claimed reimbursement for parking at an airport in California for three days but then presented receipts showing he took a limousine service to and from the airport. Finally, Dr. Gershwin originally claimed he flew in "coach class," but the documents indicate that he purchased a "class A" fare and sat in the first or third row, clearly indicating he booked a first-class ticket. That the ticket was a first-class ticket is consistent with the cost: $1,339.80 for a one-way ticket to D.C. from California, and $1,293.30 for the return trip.

These changes are distressing. As a person with a great amount of experience in testifying in the Vaccine Program, Dr. Gershwin knew or should have known about the expectations for travel expenses. Mr. Sadaka, too, as an attorney who has retained many experts in the Vaccine Program and who has often sought reimbursement for their work, knew or should have known about the expectations for travel expenses. See Guidelines Section X, Chapter 3. At best, the original invoice from Dr. Gershwin constitutes sloppy work due to an inattention to detail.[7] The undersigned certainly expects that in future cases, Dr. Gershwin will present more accurate information (supported by receipts) and Mr. Sadaka, as the attorney sponsoring the application, will insist upon it.

For the present case, Dr. Gershwin will be reimbursed for the price of a coach class airplane ticket,[8] one night in a hotel, taxi cab service in California, taxi cab service in Washington, DC, and food for which he presented a receipt. A reasonable estimate for these expenses is $1,226.41.

---

[7] The Secretary's decision not to interpose objections to motions for attorneys' fees and costs may have contributed to this laxity by promoting a culture in which petitioners are aware that the opposing party is no longer policing their submissions for attorneys' fees and costs. While the undersigned has found that the Secretary's deliberate choice not to object to particular items of a fee request (for example, in this case, first class airline travel) constitutes a waiver of any objection, two opinions from the Court of Federal Claims have held that special masters have a duty to evaluate the reasonableness of fee applications even in the absence of an objection. Spahn v. Sec'y of Health & Human Servs., No. 09-386V, ___ Fed. Cl. ___ (slip op. June 6, 2018); Dominguez v. Sec'y of Health & Human Servs., 136 Fed. Cl. 779 (2018). Thus, the undersigned has reviewed the fee application for its reasonableness. However, the undersigned remains concerned that the outcome in this case — a sua sponte reduction in the amount awarded in attorneys' fees and costs — could be seen as justifying the Secretary's voluntary relinquishment of his right to challenge items in the fee application.

[8] Dr. Gershwin may have been able to justify a first-class ticket. However, because he sought reimbursement for a coach-class ticket instead of providing a justification for the first-class ticket, he lost the opportunity to make that case.

For these reasons, Ms. Schoeberlein is awarded $16,060.78 in attorneys' costs.

\* \* \*

The Vaccine Act permits an award of reasonable attorneys' fees and costs. §15(e). The undersigned finds $58,724.08 ($42,663.30 in fees and $16,060.78 in costs) to be a reasonable amount for all attorneys' fees and costs incurred. The undersigned GRANTS the petitioner's motion and awards $58,724.08 in attorneys' fees and costs. This shall be paid as follows:

**A lump sum of $58,724.08 in the form of a check made payable to petitioner and petitioner's attorney, Mark T. Sadaka, for attorneys' fees and costs available under 42 U.S.C. § 300aa-15(e).**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[9]

**IT IS SO ORDERED**.

S/Christian J. Moran<br>
Christian J. Moran<br>
Special Master

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.